# McGonigle et al., Appellants, *v.* Saint Clair Coal Co.

*Equity—Streams—Diversion of waters—Injunction.*

1. Where, in an injunction bill, the injury complained of results from the unlawful diversion of water from one stream and its discharge into another stream in a different water shed, and such diversion is apparently to be continued indefinitely, equitable relief will not be denied on the ground the injury is not irreparable.

2. The plaintiffs in such case will not be convicted of laches because of delay in instituting the suit, where it appears that although there had been an earlier diversion, the injury complained of had been in progress for a comparatively short period of time.

*Equity—Certification to common pleas—Act of June 9, 1907, P. L. 440.*

Where the injury complained of is a recurring one and the cause, as presented, is one cognizable in a court of equity, it is error to certify the case to the law side of the court, and the matter in controversy should be adjudicated under equitable principles.

Argued December 3, 1918. Appeal, No. 284, Oct. T., 1918, by plaintiffs, from decree of C. P. Schuylkill Co., sitting in equity, March T., 1918, No. 2, dissolving preliminary injunction in the case of James McGonigle, for himself and in behalf of Bridget McKernan, Edward McGonigle, Sophia McNulty, Mary Donnelly and William McGonigle v. The Saint Clair Coal Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Bill in equity to enjoin the diversion of waters of a stream. Before BERGER, J.

The opinion of the Superior Court states the case.

The court dissolved the preliminary injunction and certified the case to the court of common pleas, under the provisions of the Act of June 7, 1907, P. L. 440. Plaintiffs appealed.

*Error assigned,* among others, was the decree of the court.

*Edmund D. Smith,* and with him *J. M. Boone,* for appellants.—The plaintiffs were entitled to equitable relief: Commonwealth v. Pittsburgh & Connellsville R. R., 24 Pa. 159; Scheetz's App., 35 Pa. 88; Stewart's App., 56 Pa. 413; Masson's App., 70 Pa. 26; Allison's App., 77 Pa. 221; Bitting's App., 105 Pa. 517; Hacke's App., 101 Pa. 245; Mershon v. Walker, 215 Pa. 45; Hall v. Pennsylvania R. R., 215 Pa. 172; McConahy v. Western Allegheny R. R. Co., 31 Pa. Superior Ct. 215; Bussier v. Weekey, 4 Pa. Superior Ct. 69; Walters v. McElroy, 151 Pa. 549; Griffiths v. Monongahela R. R. Co., 232 Pa. 639; Clouse v. Crow, 68 Pa. Superior Ct. 248.

*Roscoe R. Koch,* and with him *John F. Whalen,* for appellee.—The court properly dissolved the injunction: Kramer v. Slattery, 260 Pa. 234; Penna. Coal Co. v. Sanderson, 113 Pa. 126; Strauss v. Allentown, 215 Pa. 96; Maust v. Penna. & Maryland Street Ry. Co., 219 Pa. 568; Berkey v. Berwind-White Coal Co., 220 Pa. 65; Lehigh Valley Coal Co. v. Lentz, 228 Pa. 346; Condron v. Penna. R. R. Co., 233 Pa. 197.

OPINION BY HEAD, J., April 21, 1919:

The plaintiffs filed their bill alleging they were the owners of certain real estate therein described which was improved with a stone dwelling house used by one of them as a residence. The defendant was and is a corporation engaged in the mining, preparing for market and shipping coal. In the operation of its work, it drew from a natural stream called Mill creek a portion of the waters thereof and used them in washing coal. This water, after being thus used, together with other water drawn from the mines of the defendant, was carried to a sump or settling tank and then by artificial means so handled that it was discharged into or upon an entirely different

watershed from that where it originated, to wit, the watershed of Wolf creek. That such diversion of the waters of Mill creek was without right in the defendant and that, shortly before the filing of the bill, the premises of the plaintiffs had been overflowed on several occasions and considerable deposits of muck and culm had been left on the land and in the building to such an extent that the latter was rendered uninhabitable and the occupants were compelled, at least temporarily, to abandon it.

The defendant filed a responsive answer and among other things asserted the plaintiffs had an adequate remedy at law and therefore denied the jurisdiction of a court in equity to furnish any relief. A preliminary injunction restraining the defendant from thus interfering with the waters of Mill creek was awarded. Upon the hearing of the rule to dissolve or continue the parties agreed that the testimony then taken should be considered thereafter, upon final hearing, subject to the right of either party to adduce additional testimony on such final hearing. In the disposition of the rule, after a full consideration of the testimony taken, the learned court below entered a decree dissolving the injunction and certifying the case to the Court of Common Pleas at the costs of the plaintiffs "under the provisions of the Act of June 7, 1907, P. L. 440." The reasons moving the learned chancellor to this action as stated by himself were these: "The chancellor, after final hearing, found that the preliminary injunction should be dissolved on the ground that the plaintiffs had lost their right thereto by laches and acquiescence and that they had a complete and adequate remedy at law." The plaintiffs, in the exercise of the right conferred upon them by the statute referred to, took this appeal from the order certifying the case to the common pleas.

The act of assembly we have cited was enacted for the purpose of speeding the final disposition of suits in equity. As provided therein, the defendant, in its answer filed, promptly challenged the jurisdiction of the

court on the ground that plaintiffs had an adequate remedy at law. There was no prayer for the awarding of an issue to try any particular question or questions of fact. It therefore became the duty of the learned chancellor to dispose in limine of the question raised by the plea to the jurisdiction. To do this it became necessary to produce testimony so that the facts upon which the determination might properly rest could be developed.

It plainly appears from the facts found the defendant is but a private corporation without right other than its right as a riparian owner to use or interfere with the waters of Mill creek. It was not contended but that defendant had diverted a quantity of this water from its natural channel and after making use of it did not return it to that channel, but diverted it into an entirely different watershed which it could not and would not reach if controlled only by natural laws. The operations of the defendant company, involving such use of the water, were conducted by methods which appear to have been intended to be permanent in character. If then this resulted in flooding the plaintiffs' property, it would fairly follow that under similar conditions such results would happen again and again, and thus there was made out, on the face of the bill, a case which warranted an application for equitable relief.

It is to be remembered the order appealed from must find its warrant in the Act of 1907. Under that statute it can be justified only on the ground that it has been correctly determined the learned court below was without jurisdiction to proceed to a final decree in accordance with the rules and practice governing the trial of cases in equity. We are not and cannot be concerned with a consideration of the reasons that might with propriety lead a chancellor to refuse a decree even in a case where the jurisdiction was unquestioned. We may agree with the learned chancellor that the wilful laches of a complainant, persisted in for a great length of time, and reasonably leading to action by another party which

would make it inequitable for a chancellor to interfere, may furnish ground for the refusal of a decree. The party would thus be left to such remedies as are provided by the law. But this is quite a different thing from concluding that even such laches destroys the jurisdiction of the court. The case of Maust v. Ry. Co., 219 Pa. 568, may be taken as a fair exemplar of the correct doctrine which has been enunciated in many cases. We quote from the opinion of Mr. Justice ELKIN: "As a general rule relief will not be granted where the benefit to the complainant is entirely disproportionate to the injury complained of: Becker v. Street Ry. Co., 188 Pa. 484; or where there is an adequate remedy at law or where the party seeking redress has placed himself in such a position that to grant his request would work an injustice to the other party whom he has led to believe could do the particular thing which he now undertakes to restrain."

If it be true, as the court below finds, that some time ago another coal company, whose works were situated higher up the stream, diverted some of the water of Mill creek into the watershed of Wolf creek and that plaintiffs did not complain, we are unable to perceive how it can be concluded from that fact the plaintiffs have lost their right to complain of the unwarranted action of the defendant. The earlier diversion may have been so insignificant in quantity or the place where it occurred so far removed from the plaintiff's property that no substantial injury to the plaintiffs resulted. We do not think they were obliged to assert their naked right as riparian owners, if they had such right where they suffered no substantial injury. The diversion complained of in the present case has been going on but for a comparatively short period of time. The injuries complained of in the bill were the first substantial ones that were done to the property of the plaintiffs. We are unwilling to say that their failure to move earlier, has brought about the result that they have estopped them-

selves to complain when a serious injury has developed from what at first may have appeared as but the invasion of a naked legal right.

Again it appears that upon the granting of the preliminary injunction the defendant so modified its plan of operations that the water taken from Mill creek was returned to the channel of that stream. This was the status that existed at the time the order appealed from was entered. It has not been shown, to our satisfaction, that such modification in the conduct of the defendant's business involved any considerable expense or was productive of any serious disturbance in the prosecution of its work. Since that change no injury to the plaintiffs' property has resulted. In this aspect of the case there might be found considerable support for the proposition that the injunction should be made permanent unless some controlling reason to the contrary should appear.

Whilst we suppose it to be a matter of general knowledge, of which a court might take notice, that the winter of 1917-1918 was a more severe one than those usually prevailing in this section, nevertheless the court has not found that it was of such extraordinary character that similar conditions might not be reasonably expected to recur at more or less frequent intervals. Even unusually extensive accumulations of snow and ice in this section could scarcely be deemed such wholly unexpected occurrences as to be outside of the reasonable calculations of men. The court below was not, in our judgment, deprived of jurisdiction to dispose of the case upon any such consideration.

But it is urged that the plaintiffs had a complete and adequate remedy at law. It is much to be doubted. In an ordinary action of trespass they could of course recover the damages, if any, resulting from an unlawful act by the defendant down to the date of the impetration of the writ or perhaps to the time of actual trial. But if the diversion of the water from its natural watershed to another was a wrongful act, resulting in injury, it

does not appear to have been temporary or sporadic in its character. It was seemingly an arrangement made by the defendant intended to be continuous and permanent in its character. Unless the cause of the mischief were removed, the plaintiffs' property, in all probability, would be subjected to a recurrence of the injury as often as the conditions existing at the time referred to in the bill might be repeated. To obtain the full relief to which the plaintiffs may be entitled, in such cases, it would be necessary, even after a favorable verdict in an action of trespass, to invoke the aid of a court of equity to bring about the removal of the primary cause.

The suggestion that plaintiffs, by removing from the house, have conclusively affirmed their intention to finally and permanently abandon it, and therefore the injury was completed before the bill was filed, is not a convincing one. The land and house are still there. It would not be unreasonable to assume the owners were awaiting some decree protecting them from future injury before spending their money for repairs.

Upon a consideration of the whole case we are led to conclude the plaintiffs presented a cause cognizable by a court of equity and that the learned court below was invested with full jurisdiction to proceed in the usual course to a final decree that would adjudicate the matter in controversy in the manner contemplated by the statutes conferring such equity jurisdiction. If it be said the bill contains no averments as to the extent of the damage and no prayer that an account thereof be taken, these are matters that can doubtless be remedied in the court below so that its final decree may put an end to the controversy. But the question is not before us.

The order of the learned court dissolving the injunction and certifying the case to the Court of Common Pleas is reversed and set aside, the injunction is reinstated and the record remitted to the court below with a procedendo. The costs of this appeal to be paid by the appellee.