## McGonigle et al., Appellants, v. St. Clair Coal Co.

*Equity—Injunction—Waters—Wrongful diversion.*

On a bill in equity for an injunction to restrain the unlawful diversion of water from one stream, and its discharge into another stream in a different watershed, and the consequent damage to the plaintiff's property, it is error not to grant such injunction.

Argued December 8, 1920.   Appeal, No. 335, Oct. T., 1920, by plaintiffs, from decree of C. P. Schuylkill County, March T., 1918, No. 2, Sitting in Equity, dismissing preliminary injunction in the case of James McGonigle, for himself and in behalf of Bridget McKernan, Edward McGonigle, Sophia McNulty, Mary Donnelly and William McGonigle, v. The St. Clair Coal Company.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Reversed.

Bill in equity to restrain the diversion of the waters of a stream.   Before BERGER, J.

The facts are stated in the opinion of the Superior Court, and in the report of the same case in 71 Pa. Superior Ct. 480.

The court dissolved the preliminary injunction. Plaintiffs appealed.

*Error assigned,* among others, was the decree of the court.

*Edmund D. Smith,* and with him *J. M. Boone,* for appellants.

*Roscoe R. Koch* and *John F. Whalen,* for appellee.

OPINION BY HEAD, J., March 5, 1921:

It is true that when this case was formerly before this court (71 Pa. Superior Ct. 480), but a single question

was decided. That question, however, involving as it did a challenge to the equity jurisdiction of the court below, necessarily demanded at the hands of that court an ascertainment of the material and controlling facts in the case. The learned chancellor correctly understood his duties in that respect, and made detailed findings of the important facts established by the testimony produced at the hearing. To the facts thus ascertained he applied what he regarded as the proper legal principles, and thus deduced the conclusion the complainants in the bill filed had an adequate remedy at law to recover damages for the injury they had sustained. Before the passage of the Act of June 7, 1907, P. L. 440, that conclusion would have resulted in a dismissal of the bill without more. But following the provisions of the statute just referred to, the learned chancellor entered a decree dissolving the preliminary injunction that had been granted and certified the case to the court of common pleas, so that the legal rights of the parties might be determined in the trial of an action at law. It was from that order the former appeal was taken, as the statute provided for such an appeal. This statement makes it apparent, especially in the light of what afterwards followed, that practically the whole of the case was before us when we formerly considered it, even if the learned chancellor had been mistaken in his conclusion that a court of equity was without jurisdiction. But if it had appeared, from the findings of fact and the record as then made up, that the plaintiff, for other reasons, had lost his right to equitable relief, this court would not have reversed, because the appellant would not have been aggrieved by an order giving him an opportunity to go into a court of law, when it was apparent he had no right to recover in any court. This court, therefore, in the discharge of what it conceived to be its duty in the premises, fully stated in the opinion filed, all of the important facts in the case as then developed by the testimony. It is true that testimony was taken on the hear-

ing of a motion to continue or discharge the preliminary injunction that had been entered, but it was stipulated all of that testimony should be thereafter considered as if taken on final hearing. This court reversed the order made by the court below already referred to, reinstated the preliminary injunction that had been dissolved, and remitted the record to the court below with a procedendo. Thereafter no further testimony was offered by either party to require any modification or reversal of the findings of fact theretofore made by the learned chancellor. All that happened in the court below after the record had gone down, appears to have been a lengthy discussion between court and counsel as to the proper interpretation of the decree of this court. We did not think then, we do not think now, it required any interpretation. All that was necessary was that it should be executed according to its plain terms and undoubted meaning. It was open to the complainants in the bill to offer any additional testimony they chose to offer. Indeed it was even suggested in the opinion of this court that they amend their bill of complaint so as to include the subject of damages and thereafter offer testimony to support a decree ascertaining those damages. That suggestion was unheeded for reasons no doubt satisfactory to the complainants and their counsel. The respondent, on the other hand, was also at liberty to offer additional testimony for the purpose of having the findings of fact theretofore made modified or set aside, but no such testimony was offered, and the record was finally closed in substantially the same condition as to the facts that existed when we formerly considered it. The learned court below then, in the exercise of his duty to enter a final decree, reached the conclusion the injunction should be finally dissolved and the bill dismissed because of the laches of the complainants. From that decree this appeal comes.

Let us briefly restate what we consider to be the controlling findings of fact in the case, as the learned

chancellor determined them. 1. That the defendant diverted the water of Mill creek into the watershed (of Wolf creek) in which the plaintiff's property is situated, by conducting the water of Mill creek to a tank, from which it pumped the water into its breaker and used it for washing coal, thence to a sump, thence to a slush dam, whence it ran and was discharged through a ditch maintained by the defendant into the watershed of Little Wolf creek, and thence on to the property of the plaintiff. 2. That the water of Mill creek so diverted into the Little Wolf creek watershed and onto the property of plaintiff, carried muck or culm that was deposited on the property of the plaintiff. 3. That except for the diversion of the waters of Mill creek by the defendant, the water of the said creek could not flow into the watershed of the Little Wolf creek, nor upon the property of the plaintiff. 4. That in December, 1917, the water of Mill creek, so diverted and polluted with muck, culm or coal dirt, flooded the plaintiff's property to the depth of from one to three inches and rendered the plaintiff's house uninhabitable, etc. 5. That such floodings and deposits occurred on the 7th, 8th, 9th, 10th, 11th, 12th, 14th and 16th days of January following.

A preliminary injunction was awarded on the 21st of January, 1918, and the findings of the court, with a decree nisi, were filed upon the 27th of May, 1918, as to which date the learned chancellor further found that since the granting of the injunction the plaintiff's property has not had any water cast upon it from the defendant's operation, and the water of the Little Wolf creek has flowed, impregnated with sulphur it is true, but clear of muck, culm and coal dirt.

Upon the facts thus found, the learned court predicated the following conclusions of law: 1. "That the diversion by the defendant of the water of Mill creek from its natural channel into the channel of Little Wolf creek is without right and illegal." 2. "That the increase by the defendant in the flow of water in the Little

Wolf creek and the pollution by the defendant of the water naturally flowing in Little Wolf creek and on to or through the property of the plaintiff is without right and illegal."

Now as we have already stated all of these facts remained in the record at the time of the final hearing, with the same compelling force as they had at the time they were found by the chancellor. It has already been determined by this court they properly and completely grounded the jurisdiction of a court of equity to furnish relief unless such relief should be denied for some reason not then apparent to this court in its examination of the record as it came from the court below. As already stated, upon a final consideration of the entire case, the learned court below dismissed the bill on the ground the plaintiffs had lost their right by laches. No new facts upon that subject appear. No new testimony was offered. That question was in the case when it was formerly considered upon the same findings and record we now have before us. To demonstrate that this subject received the full attention of this court at the time, we quote from the opinion then filed: "If it be true, as the court below finds, that some time ago another coal company, whose works were situated higher up the stream, diverted some of the water of Mill creek into the watershed of Wolf creek and that plaintiffs did not complain, we are unable to perceive how it can be concluded from that fact the plaintiffs have lost their right to complain of the unwarranted action of the defendant. The earlier diversion may have been so insignificant in quantity or the place where it occurred so far removed from the plaintiff's property that no substantial injury to the plaintiffs resulted. We do not think they were obliged to assert their naked right as riparian owners, if they had such right where they suffered no substantial injury. The diversion complained of in the present case has been going on but for a comparatively short period of time. The injuries complained of in the bill were the first sub-

stantial ones that were done to the property of the plaintiffs. We are unwilling to say that their failure to move earlier, has brought about the result that they have estopped themselves to complain when a serious injury has developed from what at first may have appeared as but the invasion of a naked legal right." We do not think that because the plaintiff property owners saw the defendant build a slush dam up on its own property lying above them, they were bound to anticipate the injurious results that first became apparent just before this bill was filed. They were not bound to foresee that the walls of the slush dam would not be constructed sufficiently tight to hold the contents that were brought to them; nor that the defendant might in time permit the culm, silt, etc., that would be deposited therein to so far fill up the dam or tank that its contents might overflow before the precipitation would be completed. Indeed we see nothing in the record now, as we saw nothing then, to justify the conclusion that the mouths of the plaintiffs should now be closed to assert that the unlawful diversion of the water of Mill creek by the defendant into the watershed in which the property of the plaintiff was situated, had been so managed by the defendant that it finally resulted in substantial injury to their property.

We may advert to one other consideration that appears to have operated to the injury of the plaintiff in the final consideration of the case in the court below. It may be true the defendant constructed its slush dam without negligence and operated it in the same way and that the operation of that dam is useful in the defendant's work of preparing its coal for market. None of these considerations are adequate in the eye of the law to justify the defendant's act in diverting water from one stream to another in a different watershed to the established injury of these plaintiffs. And this is especially true in the light of the findings of the learned judge below, that no overflow had occurred since the preliminary injunc-

tion had been granted, and that there exists in the record no finding and no evidence to support a finding, that whatever change had been made by the defendant company during the continuance of the injunction, had been made at a prohibitive cost, or that because of the injunction its mining operations had to be entirely sus-pended. We therefore said in our former consideration of the case, "It appears that upon the granting of the preliminary injunction the defendant so modified its plan of operations that the water taken from Mill creek was returned to the channel of that stream. This was the status that existed at the time the order appealed from was entered. It has not been shown, to our satis-faction, that such modification in the conduct of the de-fendant's business involved any considerable expense or was productive of any serious disturbance in the prose-cution of its work. Since that change no injury to the plaintiff's property has resulted."

That language may be as truly predicated of the con-dition of the record as it is now before us, as it was when it was written. We can see no reason for anticipating any difficulty in formulating a proper decree. Of course no decree granting any relief is before us for our con-sideration. Certainly these plaintiffs would not be en-titled to a decree that would go no farther than to re-strain the defendant from diverting the waters of Mill creek from their natural channel. The plaintiffs are not riparian owners along that stream, and they have no interest, and do not pretend to have any, in the extent to which the defendant depletes the flood of the waters therein. It is not an injunction to restrain that action merely they seek. Their only interest arises when the waters so diverted from a watershed in which they are not concerned, are wrongfully turned into another water-shed on which their property lies, and are thus made a source of injury to their property. It is against the con-stant recurrence of such injury they have sought the aid

of a court of equity. We are all of opinion they are entitled to the protection of a decree.

The decree of the court below dismissing the plaintiff's bill is reversed and set aside, the bill is reinstated and the record is remitted to the court below with direction to enter a decree that will grant the proper relief in accordance with the principles here and heretofore determined by this court. The appellee for costs.