## Belin, et al. *v.* Department of Environmental Resources.

Argued May 3, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Robert P. Browning,* with him *Carl Carey,* and *Oliver, Price and Rhodes,* for appellants.

*Stanley R. Wolfe,* with him *K. W. James Rochow,* Assistant Attorney General, for appellee.

OPINION BY JUDGE KRAMER, June 7, 1972:

The appeal presently before this Court arises from an Adjudication and Order issued by the then Acting Secretary of the Department of Environmental Resources (Department), dated October 27, 1971. The Adjudication and Order dismissed the appeal and objec-

tions filed by protestants to the June 11, 1971, issuance by the Department of a Water Quality Management Permit[1] to Sandvik Steel, Inc. (Sandvik), located in South Abington Township, Lackawanna County. The permit application as filed by Sandvik for its industrial waste treatment facility was in reality a request for permission to discharge cooling and rinse waters resulting from its manufacturing process into a swamp that forms the headwaters of Ackerly Creek.

Sandvik is engaged in the business of finishing stainless steel tubing for the chemical and nuclear industries. Stainless steel tubing arrives at the plant in an extruded state and is thereafter subjected to a finishing process. The finishing process at the Sandvik Plant entails the bathing of extruded tubing in acid to remove an oxide scale, formed during manufacture, followed by successive rinses in a neutralizing solution, cold water (twice) and hot water. At this point the tubing can be packaged for sale and distribution, or it can be further processed if additional reduction of tube size is desired.

The record indicates that three basic types of effluents are involved in the maintenance and operation of Sandvik. (1) Natural rinse and plant cooling waters, (2) sludges and (3) industrial wastes. Plans call for the disposal of type (3) from holding tanks or sanitary sewer discharge, but not into Ackerly Creek. Type (2) is to be concentrated in special holding tanks and later to be hauled away to an approved sanitary landfill. Type (1) is to be pumped to a high point on the Sandvik property, and from there it will flow by gravity to a discharge point on a hill adjacent to the swamp that forms the headwaters of Ackerly Creek.

---

[1] At the time of application, August 3, 1970, the desired permit was denominated as a Sanitary Water Board Permit. The application was filed pursuant to the Clean Streams Law, Act of June 22, 1937, P. L. 1987, as amended, 35 P.S. 691.1, et seq.

The protestants own properties located along the course of Ackerly Creek, i.e., from the swamp at the headwaters of Ackerly Creek extending to Glenburn Pond, that body of water into which Ackerly Creek flows. The protestants were permitted to intervene and participate in a hearing held on July 22, 1971, *after* the permit had been issued. They had requested the right to participate in a pre-issuance hearing, however, this request was not granted inasmuch as no such hearing was held.[2] It is the position of the protestants that the Department is without the power to authorize and permit the discharge of type (1) effluents into the headwaters of Ackerly Creek. They point out that the Sandvik Plant and Ackerly Creek are situate within two different watersheds, and the discharge of type (1) effluents into Ackerly Creek can be achieved only as a result of a mechanical pumping process. Protestants assert that such a "foreign" discharge is a violation of their riparian rights, is unlawful, and therefore the Department is without power to issue the permit. We note here that Sandvik purchases all of its water at a meter head of a water public utility. The utility's source of water is not disclosed in the record.

The Department is the repository of very broad powers conferred by the Legislature. The Act of December 3, 1970, P. L. 834, Act No. 275, 71 P.S. 510-1, et seq., creating the Department of Environmental Resources, states at Section 510.4:

"The Department of Environmental Resources shall have the power and its duty shall be:

"(1) To study, consider, and determine upon a public policy with regard to the conservation, marketing, and equitable distribution of the water and power to be derived from the utilization of the water resources

---

[2] We find no statutory requirement placed upon the Department to hold pre-issuance hearings.

of the Commonwealth . . . to the supply of water and power for . . . industrial use. . . ."

"(6) . . . and generally to devise all possible ways and means to conserve and develop the water supply and water resources of the Commonwealth for the use of the people thereof. . . ." Section 5 of the Clean Streams Law, 35 P.S. 691.5, similarly spells out broad powers granted to the Department in the regulation and control of the use and discharge of the waters of the Commonwealth.

The scope of review of this Court is to determine whether the Department committed a manifest abuse of discretion or an error of law. *Sierra Club, et al. v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 110, 281 A. 2d 256 (1971). Furthermore, the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. 1710.1, et seq., to which the Department is subject, directs this Court, at 71 P.S. 1710.44, to affirm an adjudication of the Department: ". . . unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law . . . or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. . . ."

The hearing record discloses that the system to be employed by Sandvik, the "Lancy Closed Loop Integrated Neutralization System," is capable of treating such waters as are intended to be discharged into Ackerly Creek so that they will be essentially of raw water purity and free of contamination, meeting effluent criteria as formulated by the Department. The Department conducted extensive and adequate investigations and tests in determining that the Sandvik discharge into Ackerly Creek would satisfy all statutory and departmental requirements. These investigations and tests looked to water quality and quantity criteria, to

considerations of temperature, and to the chemical and biological requirements of treated effluents.

The record is devoid of evidence indicating any violations by Sandvik or the Department of any statute or regulation. Likewise the record is devoid of convincing substantial evidence that the proposed Sandvik discharge into Ackerly Creek will result in damage or injury to the protestants.

The Department, under its broad statutory powers, is permitted to allow for the diversion of waters from one watershed to another in instances wherein the diversion causes no injury to neighboring landowners. The holding of this Court in *Chillisquaque Creek Watershed Association v. Sanitary Water Board*, 2 Pa. Commonwealth Ct. 561, 280 A. 2d 132 (1971) and the holding of our Supreme Court in *Borough of Media v. Edgmont Golf Club*, 446 Pa. 388, 288 A. 2d 803 (1972) generally support this proposition.

In the absence of evidence of damage or injury arising from the diversion of waters, or caused by increased pollution or increased water volume, we find no basis in statute or in decisional law to inhibit the functioning of the Department. Protestants have failed to support the distinction they have drawn as between *inter* and *intra* watershed diversions. Their heavy reliance placed upon the case of *McGonigle v. St. Clair Coal Co.*, 76 Pa. Superior Ct. 135 (1921), necessitates particular comment. A reading of the Superior Court opinion and the paper books leaves little doubt that the injury involved in that case was not one arising merely from increased water volume caused by an inter-watershed diversion. The Court was concerned with tangible and cognizable injury. The brief of the protestants in this case included a lengthy quote from the Superior Court opinion but omitted the very next line thereof which stated: "It is against the constant recur-

rence of such injury they have sought the aid of a court of equity." 76 Pa. Superior Ct. at 141. Read in the context of that case this "constant recurrence of such injury" was the overflow of noxious pollutants up onto the land of the plaintiffs. Furthermore, the erroneous interpretation given the *McGonigle Case, supra,* by the instant protestants ignores the basic issue of the *McGonigle Case, supra,* and that was one of remedy, i.e., whether law or equity was the proper forum. The emphasis placed upon injury and damage by the above-cited cases and similar emphasis placed by the various cases cited in the briefs of counsel confirm to us the propriety of our disposition of this appeal.

A careful review of the record made in this case leads us to conclude that there is more than adequate substantial evidence to support the findings, conclusions and Order of the Department.

This result does not mean that Sandvik is given a permit to do damage to the raparian owners of land abutting Ackerly Creek. What we have determined in this case is that the Department properly issued a permit to Sandvik which will permit Sandvik to discharge its industrial waste waters under and subject to all of the conditions and requirements which are set forth in that permit. There is no evidence in the record of this case which would indicate that Sandvik's proposed operation under this permit will cause any damage or injury to the riparian owners on Ackerly Creek. If, for some unforeseen reason, the protestants are injured or damaged as a result of the discharge of these industrial waste waters, the protestants will be adequately and legally protected under the laws of this Commonwealth.

In summary, we hold that the Department is empowered to issue permits allowing for the discharge of waste waters in instances where such discharge results from a diversion of waters from one watershed to an-

other. This right is strictly qualified by the requirement that all conditions and criteria of the statutes and regulations be satisfied. The Department did not abuse its discretion, nor did it commit an error of law. The Adjudication and Order of the Department is hereby affirmed.