190

Charles R. Hughes and Albertine M. Hughes, Appellants, *v.* Commonwealth of Pennsylvania, Department of Environmental Resources and Pennsylvania Game Commission, Appellees.

Argued June 6, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Richard A. Carothers,* with him *M. David Halpern,* for appellants.

*Robert Lesko,* Assistant Attorney General, with him *Benjamin B. Solomon,* Assistant Attorney General, *Raymond C. Miller,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellees.

OPINION BY JUDGE WILKINSON, December 7, 1973:

This is an appeal from an adjudication of the Board of Property of the Commonwealth of Pennsylvania, dismissing appellants' claims to certain properties as set forth in a petition and amended petition filed against the Department of Forests and Waters, now the Department of Environmental Resources, and the Pennsylvania Game Commission. After the original petition and answer were filed in 1957, eminent domain proceedings were instituted to Nos. 1155 through 1163, September Term 1965, in Cambria County where the property is located. The records of those proceedings were not included in this proceeding before the Board, but much of the record here is devoted to determining whether the minerals that were condemned in those proceedings were under the surface that is claimed by the appellants in these proceedings. The parties agreed that the mineral rights condemned in the eminent domain proceedings were under the surface claimed here.

Before the conclusion of the eminent domain proceedings, the parties agreed to a stipulation which set forth the amount of the damages that were to be awarded appellants in each case, totalling $236,501. Judgments were entered in each case on August 28, 1967, as

of June 5, 1967, in accordance with the amounts specified in the stipulation which was signed on May 22, 1967. On June 5, 1967, a release was executed which, since it is the controlling item in this litigation, is set forth here in full:

"KNOW ALL MEN BY THESE PRESENTS, That we, Charles Robert Hughes and Albertine M. Hughes, for the sole consideration of Two Thousand ($2,000.00) Dollars lawful money of the United States to us in hand paid by the Commonwealth of Pennsylvania, Department of Forests and Waters, the receipt whereof is hereby acknowledged, have remised, released and forever discharged, and by these presents do, for ourselves, our heirs, executors, administrators and assigns, remise, release and forever discharge the said Commonwealth of Pennsylvania, Department of Forests and Waters, and its successors and assigns, of and from all claims, demands, acts, causes of action or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done by the said Commonwealth of Pennsylvania, Department of Forests and Waters, prior to and including the date hereof, arising out of eminent domain proceedings of the Commonwealth of Pennsylvania against lands of the plaintiffs in establishing Prince Gallitzin State Park. It is intended that this General Release include and be limited to those parcels of land, surface and mineral, within and without the park boundaries, which are contained in, covered by and the subject of litigation filed to Nos. 1155, 1156, 1157, 1158, 1159, 1160, 1161, 1162 and 1163 September Term, 1965 in the Court of Common Pleas of Cambria County, Pennsylvania.

"IN WITNESS WHEREOF, we have hereunto set our hands and seals this 5th day of June, 1967."

On July 23, 1969, two years later, the appellants filed an amended petition in this proceeding, now claiming title to the surface of the land under which the

193

minerals rights were claimed in the original petition. The appellees plead the condemnation proceedings and the release as a bar.

The sole matter in issue here is whether the release bars the appellants from asserting a claim to the surface here involved. If this is considered a fact to be determined by the finder of fact, i.e., the Board, by determining the intention of the parties as manifest by the circumstances set forth in the record and as expressed in the release, then we are bound by the finding of the Board. *See* Act of June 4, 1945, P. L. 1388, Section 44, as amended, 71 P.S. §1710.44. *Belin v. Department of Environmental Resources,* 5 Pa. Commonwealth Ct. 677, 291 A. 2d 553 (1972). However, if it is considered a matter of law, the result is the same, for we agree with the conclusion of law of the Board:

"*Finding of fact*:

"All of the claims contained in plaintiffs' amended petition are included within the wording of the release.

"*Conclusions of law*:

"The release in the present case, executed by plaintiffs, prior to filing the amended petition, includes the claims set forth in the amended petition and bars recovery."

We feel that the release itself, within its four corners, makes it clear that the appellants were releasing all of their claims to either the surface or the minerals "against lands of the plaintiffs in establishing Prince Gallitzin State Park." However, if it is not clear, it would seem that the maximum the appellants could do would be to establish that there was a doubt, i.e., that the release is unclear. In that event, we must rule against appellants' position, for the release was prepared by their then attorneys. The law is clear that in such cases, the doubt is resolved against the parties preparing the instrument. *Home Builders of Mercer County, Inc. v. Dellwood Corp.,* 379 Pa. 255, 108 A. 2d 731

(1954); *General Mills Inc. v. Snavely*, 203 Pa. Superior Ct. 162, 199 A. 2d 540 (1964).

Appellants would have us interpret the release as covering only those specific items claimed for damage awards in the eminent domain proceedings and in doing so, exclude from the release all other claims appellants may have had in the same land. To put such an interpretation on the release is to give it no meaning at all, for it was signed after the stipulation of the judgments in the eminent domain proceedings. These judgments would themselves preclude claims for all specific items in that litigation. If the consideration for the release had been one dollar ($1.00), this might have some credence but, in fact, it was two thousand dollars ($2,-000.00).

It seems clear to this Court that the Commonwealth would not have paid $236,501 in judgments for eminent domain damages for rights that the Commonwealth claimed belonged to it at that time, and two thousand dollars ($2,000.00) in addition for a "General Release," and leave open other claims that the appellants might later assert in the same land.

Accordingly, we enter the following

ORDER

Now, December 7, 1973, the adjudication of the Board of Property is affirmed and the amended petition of Charles Robert Hughes and Albertine M. Hughes is dismissed.

———

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I must respectfully dissent from the result reached by the majority. While I would agree that the mineral rights condemned in the Cambria County eminent domain proceedings are below the surface rights claimed here, the Commonwealth admits that the instant surface rights were not the subject of those proceedings. Thus, Appellants have a cause of action unless the Re-

lease, quoted above, dictates a different result. I do not find this to be the case.

If the intent of the parties is to be culled from the four corners of the Release, I think it is clear that Appellants released only their claim to those interests (the mineral rights and certain minor surface rights not involved here) covered by the condemnation litigation. The Release generally discharges the Commonwealth of all "claims arising out of the eminent domain proceedings of the Commonwealth of Pennsylvania against the lands of plaintiffs in establishing Prince Gallitzin State Park." While this language could be interpreted to include the surface rights claimed in the instant petition, the subsequent sentence expressly limits the release "to those parcels of land, surface and mineral . . . which are contained in, covered by and the subject of litigation" (listing the docket numbers of the Cambria County eminent domain proceedings). Where a release contains words of general application, which are followed by a specific recital of the subject matter concerned, the words of general application are not to be given their broadest significance, but are to be limited by the specific recitation. *Kent v. Fair*, 392 Pa. 272, 140 A. 2d 445 (1958) ; *Lancaster Trust Co. v. Engle*, 337 Pa. 176, 10 A. 2d 381 (1940).

Much is made of the fact that the Release was drafted by Appellants and, thus, all ambiguities must be construed against them. Notwithstanding my finding that the Release is clear and its scope explicit, a second rule of construction would appear to be more appropriate. Where a release surrenders rights to which a party would otherwise be entitled, it must be strictly construed against the party who would use it as a bar to the assertion of these rights. *Wenger v. Ziegler*, 424 Pa. 268, 226 A. 2d 653 (1967). Appellants in the instant case have not had the opportunity to have the merits of their claim to more than 2,574 acres of sur-

face land determined, and, unless the Release was clearly a bar, I would not deprive them of that right.

If we must look beyond the language of the Release to determine the intent of the parties, it is interesting that the text of the stipulation of damages entered into refers to a general release to be subsequently executed which would cover "all matters contained in the litigation, 1155 through and including 1163, September Term, 1965." This, to me, indicates that the release was part of the settlement reached in the condemnation proceedings and would explain that its purpose was part of the consideration of the settlement. Moreover, if the face value consideration paid for the Release is to be determinative of the parties' intent, I find it equally implausible that Appellants would release their claim to 2,574.3 acres of surface land for $2,000.00, or less than $1.00 per acre.

For the foregoing reasons, I cannot interpret the Release as a bar to the instant petition.

Judge BLATT joins in this Dissent.

Judge MENCER joins in this Dissent.