## Appeal of Deguffroy

*William M. Acker,* for appellants.
*Thomas M. Burke,* for Commonwealth.
*Leslie J. Mlaker,* for Penn Township.
*Ronald M. Buick,* for Linc Engineering and Construction Inc.

COHEN, Member—Issued August 28, 1974.—This matter is before the board on the appeal of August and Viola Deguffroy, Moise J. and Norma J. Deguffroy, Samuel and Grace Petrill and Dennis and Karen Simon from the action of the Pennsylvania Department of Environmental Resources in approving the application of Penn Township, Westmoreland County, Pa., for the construction of a tertiary sewage treatment plant to serve a residential development in the township known as the "Bar-M Ranch Estates." Appellants live in the vicinity of the proposed treatment plant and

protest the issuance of the permit for a variety of reasons set forth in their appeals. The reasons set forth in the various appeals range from those of a general environmental nature to more specific ones related to the possibility of contamination of water wells and offensive odors.

The Pennsylvania Department of Environmental Resources did not take an active part in this matter, but Penn Township and Linc Engineering and Construction, Inc., the developer of the Bar-M Ranch Estates, participated actively in this matter in support of the issuance of the permit under contention.

For the reasons set forth below, the action of the Pennsylvania Department of Environmental Resources in issuing the permit for the sewage treatment facility to serve the Bar-M-Ranch Estates in Penn Township, Westmoreland County, Pa., is hereby affirmed.

## FINDINGS OF FACT

1. Appellants, all residents of Penn Township, Westmoreland County, Pa., are as follows:

(a) August and Viola Deguffroy, 400 Richmond Lane;

(b) Moise J. and Norma J. Deguffroy, 308 Richmond Lane;

(c) Samuel and Grace Petrill, 350 Richmond Lane; and

(d) Dennis and Karen Simon, 390 Richmond Lane.

All appellants, except Dennis and Karen Simon, were represented by William M. Acker, Esq. Dennis and Karen Simon, although they received due notice of the hearing in this matter, neither appeared at the hearing nor otherwise took an active role in these proceedings except by the filing of an appeal.

2. Appellees in this matter are the Pennsylvania Department of Environmental Resources, the Township of Penn, Westmoreland County, Pa., and Linc Engineering and Construction, Inc., a corporation organized and doing business under the laws of the Commonwealth of Pennsylvania.

3. Linc Engineering and Construction Inc. (hereinafter "Linc") is the owner and developer of a tract of land of approximately 24 acres in Penn Township, Westmoreland County, Pa., known as "The Bar-M Ranch Estates." Linc proposes to build approximately 95 dwelling units on its property and treatment plant and collection facilities.

4. The Bar-M Ranch Estates are located to the southeast of appellants' residences.

5. The proposed sewage treatment facility will be located at the southwesterly corner of the Linc property and approximately 1,200 feet to the southwest of appellants' properties.

6. The point of discharge for the proposed sewage treatment plant is to a wet weather stream, which is tributary to Brush Creek and downstream of appellants' residences.

7. The water supplies for appellants' residences are derived from wells on their respective properties. The said wells are located above the proposed point of discharge of the sewage treatment facility in question.

8. Although the proposed sewage treatment facility will be constructed and operated by Linc, the Township of Penn made application to the Pennsylvania Department of Environmental Resources for a permit to construct and operate such facility for the reason that the said Department of Environmental Resources has a policy which generally precludes private developers from making application for permits for

waste water treatment facilities for the treatment of domestic sewage.

9. On December 6, 1973, the Pennsylvania Department of Environmental Resources issued to Penn Township, Westmoreland County, Pa., permit No. 6573437, in response to an application made by the township on July 3, 1973. The said permit contained the following special condition:

"A. The plant hereby approved is required to effect tertiary treatment of the sewage which it receives. Tertiary treatment is treatment that will, for the purpose of this permit, produce an effluent that will contain an organic load, as measured by the 5-day bio-chemical oxygen demand test, of not more than 10 mg/1 as an average of five consecutive samples or 20 mg/1 at any time; will limit the total suspended solids to 25 mg/1 or less; will limit the volatile suspended solids to 10 mg/1 or less; will provide effective disinfection to control disease producing organisms; will provide satisfactory disposal of sludge; and will reduce the quantities of oil, grease, acids, alkalis, toxic, taste and odor producing substances inimical to the public interest to levels that will not pollute the receiving stream."

10. Permit No. 6573437 authorizes the construction of the proposed sewage treatment facility and the discharge of treated sewage therefrom in accordance with the conditions of the permit.

11. The discharge from the plant will be to a very small unnamed stream approximately 200 to 300 feet upstream of its junction with a second unnamed stream which was once a tributary of Brush Creek. In 1960 or thereabouts, the valley of this tributary was strip mined for the Pittsburgh coal lying at a depth of approximately 50 feet. This stripping extend-

ed from about 100 feet downstream of the junction of the first unnamed tributary downstream to within approximately 500 feet of Brush Creek. Since that time, the stream has disappeared underground within several hundred feet of entering the strip mine area.

12. Geologically, the area is underlain by rocks of the Pittsburgh formation of the Monongahela group of the Pennsylvanian age strata. The rocks consist of inter-bedded shale, sandstone, limestone and coal. At the base of the unit is the Pittsburgh coal, which comes closest to the surface under the stream near the sewage treatment plant discharge point where it lies at a depth of approximately 50 feet. Overlying the Pittsburgh coal is interbedded shale and sandstone. About 60 feet above the Pittsburgh coal is the Redstone limestone and coal. Above this is about 80 feet more of shale with some limestone and sandstone beds. Finally, there is a sequence of limestone beds sepa-rated by shale beds through a thickness of about 120 feet. The strata dipped to the west northwest at about six percent.

13. The well on the property of August and Viola Deguffroy is finished in and obtains its water from parts of the upper 120 feet of dominant limestone strata of the Pittsburgh formation. The well is bot-tomed 120 feet above the Pittsburgh coal.

14. The well on the property of Moise J. and Norma J. Deguffroy is near the base of the upper limestone section.

15. The well on the property of Samuel and Grace Petrill is bottomed about 35 feet above the Pittsburgh coal and is finished in the Redstone coal horizon.

16. The water in the Petrill well enters the well from the same horizon as that of the Moise J. and Norma J. Deguffroy well.

17. The mine pool into which the stream which disappears underground flows is at an elevation of between 900 and 950 feet.

18. No water from the mine pool presently enters or affects any of the aforementioned wells of the appellants.

19. The discharge of treated sewage from the Bar-M Ranch Estates will not adversely affect the ground water in the area.

20. The discharge of treated sewage from the proposed sewage treatment plant will not adversely affect the water supply of appellants.

21. Because of odor problems that may arise with respect to the operation of sewage treatment plants generally, the Department of Environmental Resources does not permit the location of sewage treatment plants nearer than 200 feet from a residence.

22. There is no residence within 200 feet of the proposed treatment facility.

23. If operated properly, odors eminating from the plant will not unreasonably interfere with the appellants' use and enjoyment of their properties.

## DISCUSSION

Appellants have appealed from the grant of a permit by the Pennsylvania Department of Environmental Resources on December 6, 1973. The permit authorized Penn Township to construct sewage treatment facilities and discharge the effluent therefrom into an unnamed tributary of Brush Creek. Under the terms of the permit, the sewage effluent is required to receive tertiary treatment prior to its discharge into the unnamed tributary of Brush Creek. Tertiary treatment is the highest degree of treatment required of municipal sewage in the Commonwealth. The requirement of tertiary for sewage discharges into

wet weather streams is generally for the purpose of preventing the coating of the stream bottom by suspended solids.

The proposed sewage treatment facility for which the permit was issued is to serve a residential development known as Bar-M Ranch Estates. This development is a 24-acre tract of land to the southeast of appellants' residences. When fully developed, there will be approximately 95 homes located therein from which the domestic sewage will flow to the proposed treatment plant.

Appellants object to the treatment plant for the reason that they fear that it will cause offensive odor problems and result in a discharge which may contaminate the waterwells on their property. With respect to the problem of ground water contamination, the parties agreed at the hearing held on April 3, 1974, to have an investigation performed by a geologist from the Department of Environmental Resources who would thereafter render a report which would become available to the parties. Accordingly, John A. Moser, a geologist from the Department of Environmental Resources, conducted a field investigation of the area on Thursday, April 18, 1974, and made a written report to Thomas Burke, Special Assistant to the Attorney General, counsel for the department in this proceeding, on June 12, 1974. This report was made available to all parties to the proceeding and the writer of this adjudication. In the conclusion to his report, Mr. Moser stated:

"It is apparent that water from the mine pool does not presently enter or affect the wells in question. It is also apparent that the stream sinks into the mine workings in the Pittsburgh Coal. I observed sewage from malfunctioning on-lot sewage systems entering the stream. I therefore conclude that the discharge

of treated sewage from the Bar-M Ranch Estates will not adversely affect the groundwater in the area. I believe that Messrs. A. Deguffroy, M. Deguffroy, J. King, S. Petrill and P. Kelly can be confident that the proposed sewage discharge will not affect their water supplies, although they are certainly justified in having raised the question."

Insofar as the question of malodor is concerned, the residences of appellants are not that close to the proposed sewage treatment facility that there should be a problem with the proper operation of the treatment plant. With regard to the proper operation of the treatment facility, it should be noted that its operation and maintenance will be under the supervision and direction of Linc until such time as the plant is conveyed to the township. After that time, the township will be responsible for its operation and maintenance. While testimony produced at the hearing discloses that the township has a "spotty" record with regard to the maintenance of its own treatment facilities, it was the opinion of the department that the developer should not be held responsible for the delinquent acts of a municipality. It further appears that the township is making efforts to upgrade the maintenance of its presently owned and operated facilities.

Whether the department should have issued the permit herein under consideration is, under the facts of this case, within the sound discretion of the department. This board may not substitute its discretion for that of the department. It is the department under the Clean Streams Law, Act of June 22, 1937, P. L. 1987, as amended, 35 PS §691.1, et seq., which is clothed with the authority to administer that law. Its discretion is not reviewable unless its action demonstrates a manifest and flagrant abuse of discretion or a purely arbitrary execution of its duties and functions: Belin, et al. v. Department of Environmental

Resources, 5 Pa. Commonwealth Ct. 677 (1972); Sierra Club et al. v. Sanitary Water Board, 3 Pa. Commonwealth Ct. 110 (1971). Inasmuch as nothing in this record indicates that the action of the Department of Environmental Resources in issuing a permit to Penn Township amounted to a manifest abuse of discretion or error in law, the action of the department must be upheld.

## CONCLUSIONS OF LAW

1. The Environmental Hearing Board has jurisdiction to decide this appeal.

2. Under the Clean Streams Law, Act of June 22, 1937, P. L. 1987, as amended, 35 PS §691.1, et seq., the Department of Environmental Resources has the authority to issue permits to municipalities for the discharge of treated sewage into the waters of the Commonwealth.

3. There is no substantial evidence in the record which would indicate that the Department of Environmental Resources abused its discretion when it issued to Penn Township, Westmoreland County, Pa., Water Quality Management Permit No. 6573437.

4. The Department of Environmental Resources did not commit any legal error in issuing Water Quality Management Permit No. 6573437 to Penn Township, Westmoreland County, Pa.


## ORDER

And now, August 28, 1974, the action of the Department of Environmental Resources in issuing Water Quality Management Permit No. 6573437 to Penn Township, Westmoreland County, Pa., is hereby affirmed and the appeal of August and Viola Deguffroy, Moise J. and Norman J. Deguffroy, Samuel and Grace Petrill, and Dennis and Karen Simon is hereby dismissed.